In the United States District Court for the
Southern District of Texas

| | | |
|---|---|---|
| Mel Jones, Individually, and | § | |
| Octavia Jones, as Representative of the | § | |
| Estate of Melvin E. Jones Jr., Deceased, | § | |
| | § | |
| Plaintiffs | § | |
| | § | Civil Action No. 17-1250 |
| v. | § | |
| | § | |
| Brazos County, | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | Jury Trial Requested |

## Original Complaint

**To the Honorable Judge of Said Court:**

Now comes the Plaintiffs, Mel Jones, Individually and as Father of Melvin E. Jones Jr., deceased and Octavia Jones, as Representative of the Estate of Melvin E. Jones Jr. Deceased, and in support state as follows:

Plaintiffs Mel Jones and Octavia Jones are persons of the full age of majority and a current resident of North Dakota. Mel Jones files this suit on behalf of himself as Father of Melvin E. Jones Jr., and Octavia Jones, as representative of Melvin E. Jones Jr., Deceased.

### Index of Counts

Count I – Brazos County – §1983 and 1988/ *Monnell* Policy Claim

Count II – Brazos County – Negligence Claim

### I.
### Parties

1.1     Plaintiff Mel Jones is a person of the full age of majority and a resident of North Dakota. Mel Jones sues on behalf of himself as father of Melvin E. Jones Jr.

1.2     Plaintiff Octavia Jones is a person of the full age of majority and a resident of North Dakota. The Estate of Mel Jones, deceased, brings this survival action by and through his biological sister, Octavia Jones, who has standing to represent the decedent's estate in this action pursuant to the holding in *Shepherd v. Ledford,* 962 S.W.2d (Tex. 1998) because there is no necessity for an administration of said estate and the decedent's heirs have or will reach an informal family agreement regarding the distribution of the estate.

1.3     Defendant Brazos County ("County") is authorized by the laws of the State of Texas to operate the Brazos County Jail. As part of its responsibilities and services, the County also operates a law enforcement agency the Brazos County Sheriff's Office that, among other duties, operates and controls the County's jail system, including the Brazos County Jail, Brazos County Jail Medical Department Nursing Staff, and Brazos County Jail Medical Department Staff Doctor. Defendant Brazos County is located at 300 E. 26th Street, Bryan, Texas 77803 in the County of Brazos, Texas. Defendant Brazos County employed persons, screening officers, medical screening personnel, medical physicians and personnel,  and other jail guards who, in the course and scope of their employment, were required to observe, watch over, and manage persons (especially persons with mental disability/retardation) placed in custody within the Brazos County Jail. At all relevant times herein, the County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein.

## II.
## Jurisdiction and Venue

2.1     This Court has jurisdiction over the claims raised in this Complaint under 42 U.S.C. §1983 and §1988, and 28 U.S.C. §1331.

2.2     Venue is appropriate in the Southern District of Texas under 28 U.S.C. §1391 as Defendants reside, and the acts complained of arose, in the Southern District of Texas.

2.3     Plaintiffs further invoke the supplemental jurisdiction of the Court pursuant to 29 U.S.C. §1367 to adjudicate pendent claims arising under the laws of the State of Texas and seek recovery under the Wrongful Death and Survival Statutes claims of the State of Texas as allowed by law.

## III.
## Nature of the Case

3.1     This is a proceeding for the Civil Action Deprivation of Rights pursuant to 42 U.S.C. §1983, Federal Question pursuant to 28 U.S.C. §1331, Proceedings in Vindication of Civil Rights pursuant to 42 U.S.C. §1988, and Wrongful Death pursuant to Texas §71.002.  All statutory notice requirements have been satisfied before the filing of this lawsuit.

## IV.
## Facts Common to All Counts

4.1     On or about August 2, 2015 and at all relevant times herein, Melvin E. Jones Jr. ("Decedent") had a history of schizophrenia and suffered severe mental health issues since birth.

4.2     On or about August 2, 2015 and at all relevant times herein, Decedent was not a violent person or had ever been in a fight.

4.3     On or about August 2, 2015, at approximately seven o'clock in the evening, Decedent complained to his father, Mel Jones ("Jones") about suffering severe stomach pains.

4.4     On or about August 2, 2015, Decedent was taken to St. Joseph Hospital Emergency Room in Bryan County, Texas.

4.5     On or about August 2, 2015, Decedent was arrested for allegedly assaulting a hospital staff person of St. Joseph Hospital Emergency Room in Bryan County, Texas.

4.6     On or about August 2, 2015, Decedent never received medical treatment at St. Joseph Hospital Emergency Room and instead was taken into custody.

4.7     On or about August 2, 2015, Decedent was transported to Brazos County Jail ("County Jail").

4.8     On or about August 2, 2015, Decedent was then processed and jailed in the County Jail operated by Brazos County Sheriff's Office.

4.9     On or about August 2, 2015, personnel at the County Jail were required to check each inmate upon intake against the DSHS CARE or CCQ system to determine if the inmate has previously received state mental healthcare.

4.10     On or about August 2, 2015 and at all times relevant herein, Decedent obtained a bond set for $8,000.00 so that Decedent could be taken to the hospital.

4.11     On or about August 2, 2015 and at all times relevant herein, Decedent's father, Jones tried to post Decedent's bond to take Decedent to the hospital, but was denied the right to do so.

4.12     On or about August 2, 2015, within 72 hours that Decedent is in custody, a sheriff is required to notify of the possible Mental Health Mental Retardation ("MHMR") issue to the magistrate.

4.13     On or about August 2, 2015 until August 18, 2015, Decedent remained in the custody of the County jail.

4.14     On or about August 2, 2015 until August 18, 2015, while Decedent was in custody, he suffered multiple and severe medical problems, including but not limited to, gross and extreme weight loss, extreme loss of appetite, starvation, high fever, cold chills, mental and psychological issues resulting in Decedent's refusal to wear clothing,  and severe stomach pains.

4.15    On or about August 2, 2015 until August 18, 2015, the County, through its agents, and/or jail personnel failed to respond and/or address Decedent's medical needs while he was in the County jail.

4.16    On or about August 2, 2015, and at all times relevant through August 18, 2015, the County, through its agents, and/or jail personnel was required to screen and evaluate Decedent on an ongoing basis.

4.17    On or about August 2, 2015, and at all times relevant through August 18, 2015, the County, through its agents, and/or jail personnel were required to keep Decedent safe and free from psychological injury or harm.

4.18    On or about August 2, 2015, and at all times relevant through August 18, 2015, the County, through its agents, and/or jail personnel were required train its jail personnel on the method and means of evaluating persons placed in custody to keep them safe from physical or psychological injury, harm, or death.

4.19    On or about August 2, 2015 until August 18, 2015, the County, through its agents, and/or jail personnel failed to provide adequate medical attention by a treating doctor to Decedent when Decedent began to inflict serious bodily harm to his person by starving himself, and instead repeatedly withheld the medical treatment of a doctor from Decedent.

4.20    On or about August 2, 2015 to August 18, 2015, at various points in time, Decedent's father Jones, was denied the right to visit or see his son Decedent.

4.21    On or about August 18, 2015, while in custody, Decedent vomited and instantly collapsed to the floor, and it was then that Decedent was transported to a hospital for medical treatment.

4.22    On or about August 18, 2015, was the first time while in custody that Decedent was taken to the hospital to receive medical treatment.

4.23    On or about August 18, 2015, Decedent died while under the custody and control of the County at the hospital.

4.24    On or about August 18, 2015, Decedent was survived by his father, Mel Jones.

4.25    Defendant caused, and is responsible for, the unlawful conduct described herein, and resulting injuries by, among other things, personally participating in the unlawful conduct, acts or omissions, or acting jointly with the others who did so; by authorizing, acquiescing in or setting into motion policies, practices, plans or actions that led to the unlawful conduct; by failing and refusing with deliberate indifference to Decedent's rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their discretion and control, including failing to take remedial or disciplinary action.

4.26    The Defendant acted under color of law and deprived Decedent of his constitutional rights, including his right to be from cruel and unusual punishment in violation of the Eighth Amendment and pursuant to 42 U.S.C. §1983[1] by withholding adequate medical treatment and attention to Decedent.  Defendant was deliberately indifferent to Decedent's serious medical needs that were evident and obvious since the date of his arrest.  Further Defendant was deliberately indifferent to his right to obtain medical treatment and to be free from unnecessary and wanton infliction of pain and further failed to provide urgently needed

---

[1] Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by U.S. Const. amend. VIII. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C.S.§1983.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).

medical care and their conduct was unreasonable and deliberately indifferent in failing to protect Decedent from harm.

## Additional Facts Related to Brazos County

4.27    Decedent was the third inmate who died under the custody of Brazos County Sheriff's Office in 2015.

4.28    The Texas Administrative Code provides rules and regulations required under the Texas Commission on Jail Standards that must be followed by each Texas Public safety correctional facility and jail. Texas Administrative Code Title 37, Part 9 directed Defendant Brazos County, Brazos County Sheriff's Office and its staff, employees and agents to follow several statutory requirements in their care, custody and treatment of Decedent, including but not limited to:

a. Having an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Furthermore, observation shall be performed at least every 30 minutes in areas where inmates known to be mentally ill, potentially suicidal, or who have demonstrated bizarre behavior are confined – (closed circuit television may not be used in lieu of required personal observation)[2];

b. Assigning hash tags, which identify inmates as having special mental health, needs in the inmate's medical records and bringing this to the attention of health personnel and/or the supervisor on duty;

c. Developing and implementing a prevention plan for inmates with MHMR and/or suicidal tendencies which address the following principles and procedures:

i.    Provisions for staff training (including frequency and duration) on the procedures for recognition, supervision, documentation, and handling of inmates who are

---

[2] Title 37 Part 9 Rule §275.1 – Regular Observation by Corrections Officers

mentally disabled/retarded and/or potentially suicidal  – supplemental training should be provided to hose staff members responsible for intake screening.

        ii.      Procedure for intake screening to identify inmates who are known to be mentally disabled/retarded and/potentially suicidal and procedures for referrals to available mental health officials;

        iii.     Procedures for communication of information relating to inmates who are known to be mentally disabled/retarded, observed to have MHMR, and/or potentially suicidal;

        iv.     Provisions for adequate supervision of inmates who are mentally disabled/retarded, observed to have MHMR, and/or potentially suicidal and procedures for documenting; and

        v.     Procedures for staff intervention prior to the occurrence of a serious deterioration of health due from mental condition.

        d.     Developing and implementing an objective classification plan that includes principles, procedures, instruments and explanations for classification assessments, housing assignments, reassessments and inmate needs.

        4.29    During all relevant times, Defendant was aware of and responsible for complying with the aforementioned rules. Despite Defendant's knowledge of this duty and obligation, personnel, agents, and employees at Brazos County and Brazos County's Sheriff's Office deliberately abdicated their responsibilities for the safety, security, and welfare of detainees and instead made a mockery of the so-called security rounds by failing to comply with the required timely physical and visual check, and by knowing that the well being of an individual could not possibly be determined through a procedure that ignored the required personal observations of the detainees.

Mel Jones et al v. Officer William Challis et. al; Original Complaint

4.30    During all relevant times, although Defendant knew that Decedent is mentally disabled/retarded, that he should have been placed in a mental health high risk status, provided necessary medical care, and that he was exhibiting sign and symptoms of inconsistent appetite, dehydration, drastic weight loss in a short duration, fever, physical discomfort, pain, weakness and illness; they failed to provide the necessary medical treatments or necessary long periods of observation of Decedent.

4.31    During all relevant times, although Defendant knew that Decedent struggled with medical issues, including physical discomfort and weakness, they were deliberately indifferent to his high risk of MHMR.

4.32    During all relevant times, Defendant, with specific notice of Decedent's ongoing medical issues – specifically including his inconsistent appetite, dehydration, drastic weight loss in a short duration, fever, physical discomfort, pain, weakness and illness –failed to offer or procure appropriate intervention and failed to ensure that he received the necessary medical attention that he needed for his serious, immediate, and life threatening condition.

## V.
## Causes of Actions

**Count I:        Brazos County – §1983 and 1988/ *Monnell* Policy Claim**

Plaintiff re-alleges all Paragraphs herein.

5.1    The actions of Defendant, which resulted in Decedent's death, were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices and/or customs of the Defendant, Brazos County, their correction department, their Boards, their Personnel Division, their agents, and/or its officials.

5.2    Defendant Brazos County, acting at the level of official policy, practice, and custom, with deliberate, callous, conscious and unreasonable indifference to Decedent's

constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint the Defendant Brazos County, its corrections department, its Boards, it Personnel Divisions, its agents and/or officials had interrelated *de facto* policies, practices, and customs which include, *inter alia*:

a. Ignoring the threat of suicide in Decedent's booking documents and during the pre-classification and classification process within the Brazos County Sheriff's Office;

b. Failing to develop, implement, and/or utilize a suicide prevention plan in accordance with Texas Administrative Code Title 37, Part 9, Rule §273.5, including but not limited to training jail staff on procedures for recognition, supervision, documentation, and handling of inmates who mentally disabled and/or potentially suicidal (and directs that supplemental training should be provided to the jail staff members who are responsible for intake screening), training jail staff on procedures for identification of suicidal tendencies or risk, training jail staff on communication with inmates on mental health and suicidal risks, and training jail staff on adequate supervision for suicidal inmates;

c. Failing to conduct visual, face-to-face observation of all inmates by jailers no less than once every 60 minutes and at least every 30 minutes when an inmate is known to be potentially suicidal, in violation of 37 Texas Administrative Code Part 9, Section 273.5(a)(1), Chapter 351 of the Texas Local Government Code, Chapter 511 of the Texas Government Code, and 37 Texas Administrative Code Part 9, Section 297.8;

d. Failing to maintain and keep up the structural conditions of the facility and maintain the necessary equipment in order to allow corrections officials to personally observe detainees at least every 30 minutes as required by law;

e. Failing to provide adequate staffing or other reasonable meant to allow corrections officials to personally observe detainees at least every 30 minutes as required by law;

f. Despite mandatory monitoring and observation requirements regarding all prisoners, especially with respect to mentally disabled/retarded and/or potentially suicidal prisoners, including Decedent, failing to adequately staff the Brazos County Sheriff's Office, Brazos County Jail Medical Department Nursing Staff, and Brazos County Jail Medical Department Staff Doctor or adequately train the staff so as to comply with the procedures for continuous monitoring, supervising, and observing prisoners, including mentally disabled/retarded and/or potentially suicidal prisoners, and thereby ensure that said requirements would be followed;

g. Failing to staff the Jail with sufficient officers to ensure compliance with their duty to reasonably and adequately identify and protect inmates with serious medical needs, including Decedent, from foreseeable vulnerability to serious physical and mental harm within Brazos County Sheriff's Office;

h. Failing to address and ignoring threats of vulnerability to serious physical and mental harm;

i. Failing to properly train, supervise, discipline, transfer, monitor, counsel, and otherwise control corrections officials;

k. Failing to appropriately and timely identify serious mental health conditions and needs of detainees like Decedent;

l. Failing to timely refer detainees like Decedent for appropriate mental health medical services, despite clear indications of serious need;

m. Failing and refusing to adequately and timely communicate critical information regarding mental health to health care providers;

n. Failing and refusing to correct, discipline, and follow up on definiteness noted in care, treatment, and/or supervision of detainees; and/or

o. Possessing knowledge of deficiencies in the policies, practices, customs, and procedures concerning detainees, and approving and/or deliberately turning a blind eye to those deficiencies.

5.3     All of the policies set forth above were adopted, implemented, supplemented, reinforced, promulgated, and affected, as a further matter of custom, practice, and policy, also a driving force in Decedent's death, by means of the failure of Defendant Brazos County to hire, train, discipline, and supervise Brazos County Sheriff's Office, Brazos County Jail Medical Department Nursing Staff, and Brazos County Jail Medical Department Staff Doctor staff, in accordance with the following principles:

a. That there be an immediate, urgent, predictable, consistent, and mandatory response to any sign or evidence of a recognizable and significant likelihood of suicide by any prisoner at that jail;

b. That when, as here, there is an immediate and recognizable likelihood of serious physical or mental harm from an inmate with mental disability/retardation, immediate and urgent steps must be taken to prevent the serious physical or mental harm;

c. That threats of suicide must be addressed consistently and predictable so that none could be ignored, disregarded, or responded to in a delayed or deleterious manner by Brazos County Office of Sheriff, Brazos County Jail Medical Department Nursing Staff, and/or Brazos County Jail Medical Department Staff Doctor.

5.4     In particular, correctional officers and other employees are not properly trained in how to take, screen, identify, refer and/or handle detainees with mental health issues, including

persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of detainees and to prevent them from taking their own lives.

5.5     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonable; and encouraged, *inter alia*, the failure to adequately observe detainees to identify the problematic behavior and interrupt any vulnerability to serious physical and mental harm, the failure to adequately screen detainees for mental status for prior or current mental disability/retardation (MHMR) and suicidal tendencies, the failure to provide preventative health care to avoid death, and the failure to provide adequate resuscitation equipment and training.

5.6     Further, the constitutional violations and damages to Decedent as described herein were directly and proximately caused by: The unofficial and/or official, tacit and/or expressed; and otherwise unconstitutional policies of authorized policy makers of the Defendant, who deliberately ignored subjecting detainees to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, deliberately ignored and failed to rectify violations of appropriate personal observation procedures, and deliberately failed to supervise and control correctional officers so as to prevent violations of detainees' rights.

5.7     Said interrelated policies, practices, and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged the Defendant to commit the aforesaid acts against Decedent and therefore acted as direct and proximate causes of said constitutional violations, and resulting injury.

5.8    The foregoing policies, practices, customs and omissions, maintained by Defendant Brazos County violated Decedent's constitutional rights.

**Count II:       Brazos County – Negligence Claim**

Plaintiffs re-allege all Paragraphs of the Complaint.

5.9    On August 2, 2015, Defendant Brazos County through its agent(s), employee(s), jailer(s), personnel, screening officer(s), and any other person otherwise employed with or through the employment of Brazos County Sheriff's Office, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor and others, acted contrary to law, and negligently, intentionally and unreasonably deprived Decedent of his rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. §1983 in a willful and wanton fashion.

5.10    The above-described acts and omissions by Defendant demonstrated a negligent and even deliberate indifference to and conscious disregard for the constitutional rights and safety of Decedent.

5.11    On or about August 2 – August 18, 2015, Brazos County Sheriff's Office personnel were inadequately trained on the procedures for recognition, supervision, documentation, and handling of inmates who are mentally disabled/retarded, and/or potentially suicidal, in violation of 37 Texas Administrative Code Part 9, Section 273.5(a)(1), Chapter 351 of the Texas Local Government Code, Chapter 511 of the Texas Government Code, and 37 Texas Administrative Code Part 9, Section 297.8.

5.12    On or about August 2 – August 18, 2015, Brazos County Sheriff's Office facilities failed to have an established procedure for visual, face-to-face observation of all inmates by jailers no less than once every 60 minutes and at least every 30 minutes when an

inmate is known to be at high risk of vulnerability to serious physical and mental harm, in violation of 37 Texas Administrative Code Part 9, Section 273.5(a)(1), Chapter 351 of the Texas Local Government Code, Chapter 511 of the Texas Government Code, and 37 Texas Administrative Code Part 9, Section 297.8.

5.13    As a result of the violation of Decedent's constitutional rights by Brazos County Sheriff's Office, Brazos County Jail Medical Department Nursing Staff, and Brazos County Jail Medical Department Staff Doctor's agents and/or employees, jailers, screening officers, and others, Decedent suffered substantial injuries, damages, and ultimately, death.

5.14    On or about August 2 to August 18, 2015, at various points in time, Decedent was not adequately monitored while in custody.

5.15    On or about August 2 to August 18, 2015, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor, and Brazos County Sheriff's Office personnel, including but not limited to Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, were negligent, willful, wanton, and reckless in failing to provide adequate monitoring of Decedent to keep him safe and secure.

5.16    On or about August 2 to August 18, 2015, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor, and Brazos County Sheriff's Office personnel, including but not limited to Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, were negligent, willful, wanton, and reckless in exhibiting a conscious disregard for the safety of Decedent in failing to keep him free from injury, harm, and death.

5.17    On or about August 2 to August 18, 2015, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor, and Brazos

County Sheriff's Office personnel, including but not limited to Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others,, were negligent, willful, wanton, and reckless in exhibiting a conscious disregard for safety of Decedent in failing to keep him in safe and suitable environment where he could be kept free from injury, harm, and death.

    5.18    On or about August 2 to August 18, 2015, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor, and Brazos County Sheriff's Office personnel, including but not limited to Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, were negligent, willful, wanton, and reckless in not providing adequate medical care and attention to Decedent when he was found injured in his cell.

    5.19    On or about August 2 to August 18, 2015, Brazos County Jail Medical Department Nursing Staff, Brazos County Jail Medical Department Staff Doctor, and Brazos County Sheriff's Office personnel, including but not limited to Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, did not attempt to transport Decedent to a medical facility to be seen by physician.

    5.20    Defendant Brazos County, by and through its agents and/or employees, Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, deprived Decedent of his rights guaranteed by the United States Constitution and federal statutes.

    5.21    As a direct and proximate result of the foregoing, Defendant Brazos County, by and through its agents and or employees, including Defendant's screening officers, jailers, jail guards, employees, personnel, staffers, and others, deprived Decedent of his rights and privileges as a citizen of the United States, and caused Decedent to suffer injury and death, of which has

caused the general damages requested by Plaintiffs in an amount excess of the applicable jurisdictional amount, to be proven at trial.

5.22    The claims and causes of action for injuries to the health, reputation, and person sustained by Decedent are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code section 71.021.

5.23    The claims and causes of action for the wrongful death of Decedent are brought by his father, Mel Jones, on behalf of himself pursuant to Texas Civil Practice and Remedies Code Sections 71.002-004.

## VI.
## Damages

6.1    Defendant is liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

6.2    Plaintiff Mel Jones suffered compensatory, special, and punitive damages for the following:

a.      Extreme mental anguish and emotional distress as a result of being deprived medical treatment by Defendant Brazos County;

b.      Extreme physical abuse, mental anguish, and emotional distress as a result of the intentional infliction of emotional distress to which Defendant Brazos County subjected Plaintiffs;

c.      Violation of Plaintiffs' civil rights by Defendant Brazos County; and

d.      Punitive Damages for egregious acts and omissions of Defendant Brazos County.

6.3    Plaintiffs are entitled to attorney's fees for litigation of this matter.

## VII.

Mel Jones et al v. Officer William Challis et. al; Original Complaint

**Punitive Damages**

7.1     Plaintiffs are also seeking punitive damages for the wrongful death of Melvin E. Jones Jr.

**VIII.**
**Jury Demand**

8.1     Plaintiffs request that this action be heard before a jury.

**IX.**
**Prayer**

9.1     Given the above, Plaintiffs, Mel Jones, as Father, and Octavia Jones, as Representative of the Estate of Melvin E. Jones Jr., deceased, prays that the judgment on their behalf and against  Defendant, as follows:

a. Compensatory, special, and punitive damages;

b. The cost of this action and reasonable attorney fees as provided by 42 U.S.C. §1983;

c. Judicial interest from date of judicial demand;

d. Trial by jury; and such further relief as this Court deems just and equitable.

Respectfully submitted,

THE COX PRADIA LAW FIRM PLLC

By:  _/s/ **Troy J. Pradia**_____
Troy J. Pradia, Partner
Texas Bar No. 24011945
Fed. Bar No. 30260
Lindsey V. Marshall
Texas Bar No. 24092763
Fed. Bar No. 2591300
1415 N. Loop West, Ste. 200
Houston, Texas  77008
Tel. 713.739.0402
Fax 713.752.2812
Attorneys-in-Charge for Plaintiffs